**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KERRI GRIMLEY,<br><br>    *Plaintiff,*<br><br> v.<br><br>PROGRESSIVE ADVANCED INSURANCE COMPANY, MILBANK INSURANCE COMPANY d/b/a STATE AUTO, and STATE AUTO INSURANCE COMPANIES d/b/a STATE AUTO,<br><br>    *Defendants.* | CIVIL ACTION<br><br>NO. 25-3111 |

Pappert, J.                              August 20, 2025

**<u>MEMORANDUM</u>**

  Kerri Grimley sued Progressive Advanced Insurance Company, State Auto Insurance Companies and Milbank Insurance Company, asserting claims for declaratory relief, breach of contract, and bad faith resulting from the denial of underinsured motorist benefits. Progressive removed the case to federal court, and Milbank subsequently moved to dismiss the declaratory relief and bad faith claims and strike portions of the complaint relating to class-action or "extra-contractual" allegations.

  The Court grants the motion in part, dismisses the declaratory relief claim with prejudice and the bad faith claim without prejudice, and strikes portions of the complaint relating to a purported "class." The purported extra-contractual allegations, though conclusory and in need of greater factual support, could bear a possible relation to an amended bad faith claim so the Court denies for now the motion to strike them.

1

I

On January 25, 2022, a Jeep driven by Cassidy Russo hit Grimley's vehicle, injuring her. (Compl. ¶¶ 18–21, ECF No. 1-4.) Grimley settled with Russo's insurance carrier, but that settlement was "insufficient to provide full compensation to the Plaintiff." (*Id.* ¶¶ 30–31.) So Grimley sought UIM benefits from Progressive, State Auto and Milbank. (*Id.* ¶¶ 32, 35.) Milbank provides "stacked" UIM benefits to John and Joyce Grimley.[1] (*Id.* ¶¶ 39–40.) Grimley contends the policy covers her because she resided with John and Joyce Grimley at the time of the accident. (*Id.* ¶¶ 15–16.)

Milbank denied Grimley's UIM claim because she "resided outside the home" listed on the policy. (*Id.* ¶ 37.) Grimley claims she resided with John and Joyce Grimley at the time of the accident and offered Milbank "proof of residency." (*Id.* ¶¶ 15, 38.) Milbank "maintained their refusal to make any offer of settlement." (*Id.* ¶ 38.)

II

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more

---

[1] Milbank's policy does not expressly cover the vehicle Grimley was driving when injured—a 2021 Jeep Cherokee. *See* (Compl. ¶¶ 13–14 (alleging that Milbank's policy covers a 2021 Mercedez-Benz GLC and a 2019 Chevrolet Silverado 1500 Crew)); *see generally* (Compl. Ex. "B," ECF No. 1-4); (Mot. to Dismiss Ex. 2, ECF No. 9-2). Progressive admits that it insured a 2021 Jeep Cherokee with the same VIN number. (Answer ¶ 73, ECF 10.) Although unclear, the Complaint indicates that Milbank's "stacked" UIM coverage somehow extends to the 2021 Jeep Cherokee. *See* (Compl. ¶¶ 39–40). Milbank never contends otherwise. *See generally* (Mot. to Dismiss, ECF No. 9); (Mem. in Supp. of Mot. to Dismiss, ECF No. 9-4); (Reply Br., ECF No. 13).

than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675). Next, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, for all "well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint. *Twombly*, 550 U.S. at 570.

### III

#### A

Courts "regularly decline" to award declaratory relief when it is "duplicative of another claim." *Kapotas v. CTP Funding, LLC*, No. 24-1995, 2025 WL 2250003, at *11 (E.D. Pa. Aug. 6, 2025) (citations omitted). A claim is duplicative when "adjudication of the latter will necessarily require resolution of the former." *In re Lincoln Nat'l COI Litig.*, 269 F. Supp. 3d 622, 640 (E.D. Pa. 2017). In other words, declaratory relief is inappropriate when resolution of one claim "will necessarily decide the question raised in the declaratory judgment claim." *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 234 (E.D. Pa. 2019).

In Count II, Grimley seeks a declaratory judgment against Milbank for UIM benefits,[2] "interest, counsel fees, and costs," and "such other relief as the Court deems appropriate." (Compl. at 18.) But in Count IV, Grimley alleges breach of contract against Milbank for denying the UIM benefits. (Compl. ¶¶ 103–05.) Grimley's declaratory relief claim duplicates her breach of contract claim. To prove Milbank breached the terms of the policy, Grimley must prove she is covered under it. *See Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991), *aff'd* 618 A.2d 395 (Pa. 1993) ("It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract.") (citation omitted); *see also Kapotas*, 2025 WL 2250003, at *11 (dismissing a declaratory relief claim for being duplicative of a breach of contract claim); *PGT Trucking, Inc. v. Evanston Ins.*, No. 24-4503, 2025 WL 607971, at *2 (E.D. Pa. Feb. 25, 2025) (same); *Westbrook Monster Mix Co., LLC v. Easy Gardner Prods., Inc.*, No. 23-2952, 2024 WL 816243, at *1 n.1 (E.D. Pa. Feb. 27, 2024) (same); *Siegel v. Goldstein*, 657 F. Supp. 3d 646, 662 (E.D. Pa. 2023) (same); *Butta*, 400 F. Supp. 3d at 234 (same); *In re Lincoln*, 269 F. Supp. 3d at 639–40 (same).[3]

B

Pennsylvania's bad faith statute provides that the court may award interest, punitive damages, and attorneys' fees if it "finds that the insurer has acted in bad faith

---

[2]  Grimley wants the Court to declare "that each member of the class is entitled to recover uninsured and/or underinsured motorist coverage under the applicable Automobile Policy." (Compl. at 18.) The portions of the Complaint mentioning a "class" are stricken for the reasons below, *see infra* subsection IV.B.

[3]  Grimley cites a single case—*Baker v. Deutschland GmbH*, 240 F. Supp. 3d 341, 350 (M.D. Pa. 2016)—to support her declaratory relief claim. But as *Baker* states, the Court "may refuse to dismiss the declaratory relief claim" when "the Court cannot fully evaluate the extent of the overlap." *Id.* Here, the extent of the overlap is clear because the declaratory relief claim is necessary to prove the breach.

toward the insured." 42 Pa. Stat. and Cons. Stat. Ann. § 8371. Courts have defined "bad faith" as "any frivolous or unfounded refusal to pay proceeds of a policy." *Keefe v. Prudential Prop. & Cas. Ins.*, 203 F.3d 218, 225 (3d Cir. 2000) (citation omitted). To recover on a bad faith claim, a claimant is required to show by clear and convincing evidence: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Wash. Nat'l Ins.*, 170 A.3d 364, 377 (Pa. 2017); *see also Post v. St. Paul Travelers Ins.*, 691 F.3d 500, 522 (3d Cir. 2012) (citation omitted).

Various actions by an insurer can rise to the level of bad faith, such as "lack of investigation into the facts[] or a failure to communicate with the insured." *Hamm v. Allstate Prop. & Cas. Ins.*, 908 F. Supp. 2d 656, 669 (W.D. Pa. 2012) (citation omitted); *Corch Constr. Co. v. Assurance Co. of Am.*, 64 Pa. D. & C.4th 496, 515 (Pa. Ct. C.P. Oct. 28, 2003) ("Bad faith occurs when an insurance company makes an inadequate investigation or fails to perform adequate legal research concerning a coverage issue.") (citation omitted); *see also Frog, Switch & Mfg. Co. v. Travelers Ins.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999). However, "mere negligence or bad judgment does not constitute bad faith; knowledge or reckless disregard of a lack of a basis for denial of coverage is necessary." *Post*, 691 F.3d at 523 (citing *Frog, Switch & Mfg.*, 193 F.3d. at 751 n.9).

Courts in this Circuit have routinely dismissed bad faith claims reciting only conclusory allegations unaccompanied by factual allegations sufficient to raise the claims to a level of plausibility required to survive a Rule 12(b)(6) motion to dismiss. *See, e.g., Smith v. State Farm Mut. Auto. Ins.*, 506 F. App'x 133, 136 (3d Cir. 2012);

5

*Barbor v. State Farm Fire & Cas. Co.*, No. 24-521, 2024 WL 3678660, at *5 (E.D. Pa. Aug. 6, 2024); *Camp v. N.J. Mfrs. Ins.*, No. 16-1087, 2016 WL 3181743, at *5–6 (E.D. Pa. June 8, 2016); *Pasqualino v. State Farm Mut. Auto. Ins.*, No. 15-77, 2015 WL 3444288, at *3 (E.D. Pa. May 28, 2015). Grimley alleges that Milbank acted in bad faith by failing to investigate, evaluate, and fulfill Grimley's request for UIM benefits.[4] (Compl. ¶ 122.) But reciting a twenty-seven-item laundry list of the ways in which Milbank could have acted in bad faith falls far short of alleging facts from which the Court can infer that Milbank lacked a reasonable basis for denying Grimley's UIM claim, let alone did so wantonly and willfully.[5]

IV

A

Finally, Milbank moves to strike "all class action allegations," (Mot. to Dismiss ¶ 11), an effort Grimley claims is untimely, (Pl.'s Opp'n to Mot. to Dismiss ¶ 1, ECF No. 11).

Under Federal Rule of Civil Procedure 81(c)(2), "[a] defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest" of three periods, including "7 days after the notice of removal

---

[4]     Relying on Milbank's denial of UIM benefits, Grimley further accuses Milbank of bad faith by "ignoring the law of the Courts of Pennsylvania," "violating the Unfair Insurance Practices Act," and "violating the Unfair Claims Settlement Practices." (Compl. ¶¶ 119, 122.) Grimley never attempts to describe how Milbank did so.

[5]     The Complaint alleges that Milbank had a "fiduciary, contractual, and statutory obligation to investigate, evaluate, and negotiate the underinsured motorist claim in good faith," and by not doing so, Milbank acted wrongfully, wantonly, and willfully. *See* (Compl. ¶¶ 93, 96, 97, 98, 102, 104, 105). These allegations all sound in bad faith. *See Hamm*, 908 F. Supp at 669 (finding that bad faith can be a "lack of investigation into the facts[] or a failure to communicate with the insured") (citation omitted); *Post*, 691 F.3d at 523 (citing *Frog, Switch & Mfg.*, 193 F.3d at 751 n.9) (finding that bad faith requires "knowledge or reckless disregard of a lack of a basis for denial of coverage").

6

is filed." And Rule 6(a)(1)(A) provides that timeliness computations should "exclude the day of the event that triggers the period." Progressive removed the case on June 18, 2025, (ECF No. 1), and Milbank filed its motion on June 25, (ECF No. 9.) Excluding the day that triggered the period (June 18), *see* Fed. R. Civ. P. 6(a)(1)(A), Milbank's motion was timely.[6]

B

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Davis v. Cont. Ass'n E. Pa.*, No. 25-1070, 2025 WL 2250262, at *1 (E.D. Pa. Aug. 6, 2025) (citations omitted). In response to such a motion, the "plaintiff bears the burden . . . of advancing a *prima facie* showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Salyers v. A.J. Blosenski, Inc.*, 731 F. Supp. 3d 670, 678 (E.D. Pa. 2024) (citation omitted). In her response, Grimley concedes that she has not pled, nor does she seek, a class action.[7] *See* (Pl.'s Opp'n to Mot. to Dismiss ¶ 11).

---

[6]  Grimley's accusation of untimeliness was itself untimely. Rule 7.1(c) of the Local Rules of Civil Procedure for the Eastern District of Pennsylvania provides that "any party opposing the motion shall serve a brief in opposition together with such answer or other response that may be appropriate, within fourteen (14) days after service of the motion and supporting brief." Grimley filed her response on July 15, 2025, (ECF No. 11), twenty days after Milbank's Motion. Under Rule 7.1(c), "[i]n the absence of a timely response, the motion may be granted as uncontested." The Court nonetheless addresses the motion on its merits

[7]  Despite conceding that this case is not a class action, Grimley insists the allegations must remain because they are "contextual language." (Pl. Opp'n to Mot. to Dismiss ¶ 11 ("Because a motion to strike is not favored, a court will generally not grant such a motion unless the material to

V

Courts should freely give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Grimley may amend Count V consistent with this Memorandum and to the extent she can allege facts sufficient to state a plausible claim for relief.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

---

be stricken bears no possible relationship to the controversy and may cause prejudice to one of the parties.") (quoting *United States v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012))). Grimley's class action allegations provide no context—they only inject accusations into this case that Grimley has no intention of pursuing.